Federal Insurance, Mr. Becker. Good afternoon, Your Honors. Excuse me, good morning, Your Honors. May it please the Court. Be the way. Every point that matters in this case, Your Honors, turns on a single ironclad rule. A liability insurance policy is triggered only by liability, which is defined in this policy as the amount of principal sum actually paid or payable in cash in the settlement or satisfaction of a claim for which the insured is liable. The decision below, of course, holds federal liable to its insured, CBS, for a $15 million liability that was never imposed on CBS. As we pointed this out in our opening brief, that holding cannot be reconciled with the plain policy language or the very definition of liability insurance. Plaintiffs on appeal responded with a completely new argument, that the settlement below is actually something they call a liability-fixing settlement under a case of this Court called Edgeworth. The moment I saw that in their brief, I thought, well, that can't be right. Nobody ever mentioned Edgeworth or liability-fixing below. And the settlement, more importantly, did not fix CBS's liability. It explicitly stated that CBS was not liable. So I looked up Edgeworth. But the NWA, Judge Fitzwater relied on paragraph 5F, does say, the class plaintiffs do not have to establish liability or damages in an adversarial trial to obtain a judgment for the defendants to pay a judgment as a condition of proven coverage. And Judge Fitzwater says everything you just said at the beginning is normally the rule. You have to get a verdict and a judgment, and then you get your insurance for it. But how do you get around that? It's not quite normally the rule. You don't always have to get a verdict or judgment. What that is doing, as paragraph 7 explains, is dealing with the Gandy rule under Texas law, which says that a plaintiff or a defendant can't settle with a plaintiff on some number without an adversarial proceeding and then assign the claim to the plaintiff and have the plaintiff turn to the insurer and say, you owe me this $10 million or whatever it is. And the insurer says, I don't know what you're talking about. You didn't establish liability in an adversarial trial. Gandy says you can't do that. But it's commonplace, and what paragraph 7 is doing is saying we're going to waive that Gandy defense. You don't have to prove it in an adversarial case. That's all that's doing. It's not saying you're automatically entitled to it because paragraph 11 of, after all, was called the non-waiver agreement. What's not being waived is the insurer's coverage defenses. That's the whole point of paragraph 11, and indeed it's the whole point of the whole agreement, is to allow the insurer to assert whatever coverage defenses it has. But I want to go back to Edgeworth because that's where the— But Judge Fitzwater found that there was negligent supervision, and you're not contesting that. Well, he didn't find in the relevant way because in the settlement agreement it was held that CVS was not liable for negligence. So we all know, the one thing we know that comes to this court and it came to the court below, CVS is not liable for negligence. It wasn't contested in the same way that if there's a complaint makes allegations and the defendant moves to dismiss as a matter of law, you don't contest the allegations. You say that they don't suffice to establish a claim. So to here, there's no point in contesting whether or not CVS was negligent because that was not an issue. CVS is not liable under negligence. We have to all agree with that. The only question then is, CVS not being liable, what's the theory on which you can recover under CVS's insurance policy? Edgeworth answers that question. Edgeworth tells us that there can't be a recovery. Here's what Edgeworth says. In the liability insurance context, of course, a tort plaintiff must first establish the liability of the debtor before the insurer becomes contractually obligated to make any payment. Now, Gandy says you have to do it through an adversarial trial. You can waive that. But what you have to do, no matter what, no matter what, is establish the liability of the debtor. And the settlement agreement says, in unambiguous terms, that CVS is not liable. It would be completely unprecedented in all of insurance law. So you're saying this whole proceeding shouldn't have happened, this whole post-settlement proceeding? No, that's what the plaintiffs say. What should Fitzwater have done, in your view? The whole post-settlement proceeding was about coverage, and the parties were mainly addressing retract. That's what the case was supposed to have been about, and that's indeed what the case was about. Because as to retract, the proceeding below this, what led to the settlement, that was a liability-fixing proceeding. Nobody talked about it that way. But it was a liability-fixing proceeding. And they did fix liability. Whose liability did they fix? They fixed retracts, and they fixed OJFs. And then what happens after that is, having fixed that liability, you litigate coverage. That's fine. The parties did litigate coverage as based on retract's liability. And there was a fight over that, a dispute. We said there is no coverage for retract because what retract did, their actions were expected. The injuries from retract's conduct were expected or intended and therefore weren't covered. CVS was never really, should never have really been part of the coverage action because CVS was absolved of the liability. So the parties did absolutely, having fixed retract's liability, continue to litigate coverage for retract. That's what we moved for summary judgment on. We said because retract's actions were expected or intended, there should have been no liability. They disagreed with that. And they moved for summary judgment for, on the theory, that the insurers for CVS could pay based on CVS's liability. And we responded and said, that can't be right. CVS isn't liable. And then Judge Fitzwater disagreed with that and said that CVS, that the insurers for CVS could be liable based on CVS's liability, but there isn't any liability. It's fundamentally unprecedented. I'm still just trying to figure out what is the purpose of the assignment. Because they're dismissed from the case, but then there is this assignment, correct? So the assignment works for both retract and CVS, and it says very clearly, all it assigns is the rights, if any, to seek indebted. But you're saying there weren't. Why would you do that if it was so clear as you're saying that there was no right for CVS? Because, as Judge Fitzwater said in the proceeding below, the parties weren't contesting it. They were contesting coverage liability. And that wasn't being resolved. It was going to be resolved at some other day. So that's, of course, what you would do. You would assign the right, if any, to seek indebted. And he should have resolved it the other way. But the fact that they assigned the right doesn't mean it's by assigning it, they're acknowledging that the right exists. The right, if any. And, more importantly, I think— that CVS is going to get dismissed from the lawsuit. It also assigns them the right to seek indebted. It just—it seems like it's superfluous. If it was really the end of the end for CVS, as I read your argument, it would be superfluous. Well, it is. But remember, retract. The parties were contemplating— Why don't you say retract? It's, I mean— Because they had an argument. Who knows what it is that CVS should be held liable, and they're wrong. There's no basis for holding CVS liable. They were going to agree to say, we're not going to go after CVS. And we said, you should agree to that. But they wouldn't. There's a dispute. It's not resolved. So the language goes in as to CVS—as to both parties. It says, you can seek indemnity. Your right to seek indemnity, if any, is preserved. And the whole point, Your Honor— Remember, the non-waiver agreement is called a non-waiver agreement. Who's the party not waiving? It's the insurers. They're not waiving their coverage defenses. So it cannot be that by assigning the right that the agreement itself says not just that we're assigning the right, but that everybody agrees the right exists and we should just go ahead and pay you $15 million. That would have happened that day if that was true. What was being preserved was the very coverage dispute that was going on. But it wasn't empty, as the plaintiffs argue, because in particular— I mean, they disagreed with us, first of all. We thought there was no basis for liability through CVS. But more importantly, there was going to be a live dispute over retracts liability. And that went on for several years. The parties actively litigated that question. And the rights to seek indemnity were assigned as to both. So the CVS point sort of came in the back door at the end after several years of disputing whether or not they could recover based on retracts liability. What is your coverage defense? As to retract? As to retract, there was a couple. But the key argument was that retracts conduct when they—that it was not—that it was expected or intended. And if a party's conduct is expected or intended, then it's not an occurrence and it's not covered. And we have lots of facts showing that retract knew when it put the product out into the market that there were going to be infant injuries, and it did so anyway. And if that were true, there would be no basis for coverage for retract. But that's not before this court because that was litigated below. Parties disputed that in summary judgment. And the court, rather than resolving that contested issue, I think to avoid resolving it— I don't want to pass aspersions on motive, but to avoid resolving a contested question on these facts, went through what I describe as a side door and said we can just do it through CVS and that solves everything. But it plainly doesn't because CVS has never been held liable for anything. More specifically— Well, what is your coverage defense to CVS? As to CVS, it's that they weren't liable. I mean, there's no—there was no liability whatsoever. Well, you don't have any liability, but do you have any defense to coverage? I mean, the liability events, he found that there's liability, that CVS for wrongful conduct, you said their wrongful conduct is not covered? What he said, and this was a question— No, no. What's CVS? What is the reason why CVS is not covered? You said you have a coverage defense that you didn't weigh. And what you're saying is that our defense is that they're not liable at all. In what way? They weren't held liable in the settlement and the proceeding that existed for the sole purpose of establishing that CVS was negligent. That's the only reason it happened, was to establish under Edgeworth that CVS was liable in negligence and that RETRACT was liable. That's what that proceeding was about. They established it as the RETRACT. There was a compromise in the settlement of that claim. But as to CVS, the plaintiffs said, we agree. This is the words of paragraph 9. Our plaintiffs agree that because CVS is—or that as successor to Revco DS, CVS is not liable to the plaintiff class. They didn't say that as to RETRACT. They didn't say that as to OJF. They just said that CVS is not liable. And because CVS is not liable, there is not a basis under Edgeworth for recovering from CVS's insurers. That's what Edgeworth squarely says. You have to fix liability. Again, to repeat, in the liability insurance context, of course, the court says, a court plaintiff must first establish the liability of the debtor before the insurer becomes contractually obligated to make any payment. That's the one thing they were doing. That's the only thing that the pursuit was about, was establishing liability. They did it for RETRACT. They didn't do it for CVS. They cannot recover for CVS. Maybe— Your liability hasn't been established. Correct. And never will be as to CVS. That's your coverage defense to CVS, that they haven't established its liability? Well, to be—to quibble slightly, I wouldn't call it a coverage defense in the sense of a notice defense or something like that. It's a reason there is no coverage. It is an essential predicate of any liability coverage that there be liability, and there's no liability. But no liability has been shown, proved. Yeah. Or it never will be. Well, how is that a response to an assignment where the SNA purports—the SNA purports to prove that you're liable? Because the assignor is—assignee cannot assert any rights the assignor doesn't have. The assignee just stands in the assignor's shoes. The assignor is not liable and never will be. That's the point. CVS has been declared, released— No, but that's circular. The only reason that you're not liable is that they have not pursued the claim. These people are not pursuing the claim against you. They're handed to somebody else who's going to pursue it. Your liability hasn't been established, but does that answer the question of why the assignee can't try to come after you? Well, it's not our liability. Remember, this is under the policy. I'm talking about CVS. Yes, CVS's liability. And what the plaintiffs did do, the same plaintiffs who were assigned the claim said you're not liable, CVS. We agree. CVS is not liable for the conduct. So they were assigning themselves a claim by saying CVS is not liable, and the question is— They're not making you liable under the terms, but they're assigning to someone else. Otherwise, I go back to my colleague's puzzlement earlier. The whole exercise here of assignment presupposes that somebody wants to hand it to someone else who's going to pursue the question of whether CVS is covered. What they were assigning was a right to obtain coverage, not a right to establish liability. It is established that CVS is not liable and never will be liable. It cannot be liable. Right, and what was assigned was the right to pursue coverage. If CVS, after that lawsuit— They agreed to be not liable. You're saying they were dismissed from the suit. I mean, they were dismissed. But paragraph 9 says they're also—the plaintiffs agree they're not liable. Not just dismissed, that they're not liable. And they didn't say that as to RETRACT. RETRACT was also dismissed. RETRACT denied liability in the boilerplate way that all defendants do. But the big difference is the settlement agreement, the plaintiffs don't agree that RETRACT is not liable. It's a compromise, a settlement of a claim for which RETRACT would be liable. That's normal. The plaintiffs agreed in the settlement agreement that CVS is not liable. What does CVS as carrier contribute to the settlement? Well, Federal has put the money in escrow in order to—percentage of the non-waiver agreement, $15 million. It's in escrow, but you want the $10 million back? Is that it? That's correct, because our insured— So you would have contributed nothing to the settlement? We will—no, not yet. Your position is you don't have to contribute anything to the settlement because your insured managed to settle it in some other fashion, so they can't come after you. Well, to be clear, it wasn't like a trick. The insured didn't manage to settle. The insured the entire time—remember, this was a liability-fixing suit against CVS and RETRACT. CVS vigorously contested its liability. CVS said we are not—we did not negligently supervise RETRACT. That claim is non-meritorious. When it came to settle the case, when it came to settle the case, CVS insisted that there was not going to be a finding of liability under CVS or they weren't going to be any part of it and didn't want their insurers to be any part of it. That's how it got worked out. They could not get an agreement from CVS in the way they did RETRACT to be part of the settlement. CVS insisted and obtained agreement from the plaintiffs that CVS is not liable. That didn't happen with RETRACT. Everything that happened after the case was an assignment of rights to pursue coverage based on RETRACT or CVS. RETRACT coverage was perfectly contested and could have been a way to get there if they ultimately established a basis for coverage based on RETRACT's conduct, but CVS was not the way to get home because CVS was not liable. Thank you. Please court. Art Brender representing Victoria Klein and Ashley Swadley as class representatives of the E-For-All class. What brings us here is truly a tragic event in which Carter Global Laboratories, wholly owned subsidiary of Revco, attempted to put out a high-potency vitamin E product that was designed to prevent retrorenal fibroplasia, now called the retinopathy in premature infants, caused by their need for this supplemental oxygen. Vitamin E was thought to alleviate that and therefore alleviate the visual impairment. In order to rush this to the market, they did no animal testing, they did no human testing, and they did not get FDA approval. They were trying to claim it was a vitamin, but actually it was an infusible, therefore a drug. And Carter Global had a horrible record. This is where Revco's liability comes in. Revco had time and again knew that they had had problems with the FDA, a number of citations, and actually five different seizures right off the board. They got court orders to seize their product because they had not gotten FDA approval. And that's why when Judge Fitchwater found that there was liability of both negligence and approximate cause that caused injury to this class, Federal didn't even contest that. They didn't contest the fact that there was a separation of insured clause in this policy that meant that by finding there was liability, which the judge did find, in the coverage dispute, which is where you decide these things, this whole sleight of hand that Federal says, this is simple, they say that in a brief, it's that simple. We've been litigating this for six years. And this was raised not in pleadings, as is required by the non-waiver agreement, rather in their reply brief and a response brief that they raised later on. But Judge Fitchwater responded to it, and I will too. Why is there no—why did they make this claim there was no liability? Why did we put that in the agreement? Because there was none. They were relieved of that liability back in 1988. Well, 88 through 91, there was a bankruptcy. The bank—excuse me, Revco and Retrac, once this happened, Revco sold Carter-Glogau's assets, and they're just a shell corporation. They named them Retrac, which is Carter spelled backwards, and that's all that is. But both of those went into bankruptcy in 1988, and that's right in the non-waiver agreement. There's a whole page that recites the bankruptcy. It was so—the bankruptcy order was put in this case in 2005. It came up again in the fairness hearing in 2010. Judge Fitchwater is very familiar with the fact that there was no liability on CVS, Revco. They didn't merge until 1997. In 1991, the bankruptcy was filed, and the bankruptcy court said quite clearly that not only was Revco and Retrac discharging bankruptcy, but so were their successors. Therefore, any successors are a sign of the debtors. So from day one, before this lawsuit was even filed, CVS, Revco, by proclaiming and like we put in the agreement, was not liable because they were successors. That's what the agreement says. But that has nothing to do with their rights as an insurer to have to insure these entities, and that's what this court has said in the Edgman case. And Judge—I believe it's Judge Ian Jones—says this. It makes no sense to allow an insurer to escape coverage for injuries caused by its insurers merely because the insurer receives a bankruptcy discharge. The fresh start policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insurer. And Judge Fitzwater mentions they say that they didn't fund anything, they weren't a lot side of anything. Well, Judge Fitzwater says that's unremarkable because none of these—the other entity that was involved, the distributor, immediately closed down the shop. So there was never a liable entity. But there were these insurance rights, which under Ohio law they call choses in action. We cited the Pinkerton case in which they talk about that. The chose in action occurs at the time of the coverage, at the time of the incident that causes coverage, and those rights are then subject to being litigated. But it has nothing to do with the liability of this entity for any actual liability in court. So the other fallacy in their analysis is they claim, because this is the only way they can, they claim that the settlement agreement—many times they say this—imposed liability on RETRACT but did not impose it on CVS. Well, first of all, as we pointed out in the brief, number 36 of the definition says quite clearly RETRACT means RETRACT and its related parties without limitation, Carter Global Laboratories, and its former parent, Revco DSH. So every place that they're talking about is—Judge Fitzwater points out his opinion, and Judge Fitzwater's opinion is exhaustive. Of course, we're asking this court to approve it, but at every point where they say that, it means both of them, number one. Number two, you cannot—the agreement does not impose liability anywhere. All you have to do is look at page two of the agreement where it says, whereas defendants dispute all claims asserted against them in the client action and deny they have any liability to the representative plaintiffs or the e-fraud class. There's a complete denial, and on page 24, the court will—I mean, the document goes even further, and it points out that, number one, once again, that there's—this is under no admission of liability, use of this agreement, and they reiterate that they're not liable. They then say this. Neither this agreement nor any act performed or document executed in furtherance of this agreement is or may be used as evidence of any liability or admission against the party. And we point that out. That's just reiterating what Texas law says. You can't use a settlement agreement to which you're not a party, and the federal specifically not a party to this settlement agreement to attempt to use it in some way, a form or fashion, and it's a matter of policy. So things are settled. People put things in settlement agreements. Somebody else can't then use that settlement agreement, which is what they're trying to do here. The other thing is their procedure, and Judge Fitzwater—we've been before him for 13 years—he goes by the book, and the book says that you—and this court says that in these coverage disputes where the facts are not determined in the underlying cause of action—and that was the case here because it was a settlement— then the court has the right and the obligation to make those fact findings in the specific coverage case, and that's what was contemplated in this. Your Honor mentions the—we did not have to. They agreed we did not have to even have any kind of adversarial trial or anything of that sort. And the reason for that is—it's the very reason that they didn't contest these—the facts of Revko's negligence. It's just uncontestable. They couldn't even find a fact issue. It's that clear, and therefore they weren't really giving up anything by saying it didn't have to happen, and it was going to happen, as Judge Fitzwater did, in the coverage dispute. We—in—I believe it's the—this case—by the way, like I said, the—let me mention one more thing before I get there. The other reason that you cannot do what they're saying in a settlement agreement in Texas is the State Farm and Casualty Accounting case v. Gamby, a Texas Supreme Court case. It's actually cited in the non-waiver agreement because what it says is this. There's some other considerations, but it has to be a fully adversarial trial. So you can't assess claim—access liability in a settlement agreement. It would void the assignment that we sought, and that whole purpose was to avoid having the—having to have the coverage dispute before we could go forward with the settlement because in this level of excess coverage, federal was way down here. There were others on top of them, and they're not obligated to do anything until the underlying coverage is exhausted. So that's—that was the purpose of doing this, and the Gamby case goes on to say, in no event, however, is a judgment for the plaintiff against defendant rendered without a full adversarial trial binding on the defendant's insurer or admissible as evidence of damages in an action against the defendant's insurer by the plaintiff. So it would void the whole—you can't do what they're claiming you have to do in order to get where they want to go. In other words, one of the things they say, I think, in their reply brief, that—they say this, that it would be an impossibility. Well, number one, it would be impossible under Texas law. You can't do that. And secondly, it sets up an impossible situation because CVS was never liable in any event because they were the successor to Revco. So the—and as I said, Judge Fitzwater goes by the book. The D.H. Horton v. Merkle Insurance Company case we cited in the brief, and it says quite clearly—this is the Texas Supreme Court—the insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. Evidence is usually necessary in the coverage of litigation to establish a refute an insurer's duty to indemnify. This is especially true when the underlying liability dispute is resolved before trial in the merits and there is no opportunity to develop the evidence, as in this case. This court, in Colony Insurance v. Peachtree, talking about the Horton case, says, where the rule otherwise, insurers like Peachtree could never establish coverage, i.e., the insurer's duty to indemnify, where there was no underlying trial on liability or the underlying trial failed to provide all the facts necessary to determine coverage. And then they cite National Union Fire Insurance Company v. Puget, where the court says quite clearly that the underlying case does not resolve all the factual issues necessary to determine coverage because the issues relevant to the question of coverage can be irrelevant to the question of the insurer's liability. Therefore, courts are not precluded from making factual findings in the coverage action. They actually claim that Judge Fitzwater's finding, which they didn't even object to, is an observation, not a finding. No, it's a finding made in the coverage dispute, which is a procedure this court, the Texas Supreme Court, says you follow when there's been no underlying determination of facts, or even if there is, there are other additional facts that need to be made. So the fact finding was properly made, as Judge Fitzwater set out in the procedure, and the liability was determined as it was. They continually talk about they were dismissed, they were dismissed, and as court knows, the dismissal was only after it was subject to their giving us, by assignment, their rights. They had rights. They weren't liable, but they had rights to this insurance, and their very own policy says that. Their policy has a bankruptcy clause in it, and it says that they are not—I'll try to quote it exactly for you, but the basic tenet is—follows the edge of the case. That is, they are not liable. The bankruptcy of their insurance, in no way—it says, in the event of the bankruptcy or insolvency of the insured, or any entity comprising the insured, the company shall not be relieved thereby of payment of any claims hereunder because of such bankruptcy or insolvency. And it says that the named insured shall be judged as bankrupt or insolvent. The policy shall cover the named insured's legal representatives as named insured. The legal representative actually was Revco coming out of the bankruptcy, then merging with CVS, and they also ignored the law of merger. The merger occurred in Delaware. This is all in the brief. Under Delaware law, an entity remains in effect for litigation involving them that occurred before the merger, and actually the law is the same in Texas and in Ohio. So basically CVS retained those rights, which they—it wasn't liable. As Edgewood points out, as their own contract says, it wasn't liable. They weren't liable for anything. They couldn't be held liable. In fact, throughout this six years of litigation, before we got to the point of settlement, that was one of the big bones of contention. That's why I say this bankruptcy was debated and debated and debated over what the effect of it was. When were the TOR claims first filed? Excuse me? When did this litigation start? It started in 2003. So 30 years after the project. That's right. Was there a latency? I was curious. Well, because people didn't know that their children had gotten this, and we used fraud and concealment because they actually—they defrauded them in various ways, and that's what Judge Fitzwater went through. It was only on the market in 1983. It was— It was on the market for four months, from November of 1983 until April the 4th of 1984, just four months, and it did a tremendous amount of harm in that short period. They knew there was a problem because it was taken off the market, but just the harms didn't manifest themselves. Yeah, it was taken off the market by order of the FDA. Yeah, right. And then there were criminal files that followed based on their violations of the FDA offering. They were found guilty in those, both Carter Blogau—excuse me, don't get me wrong. Revco was not found guilty, but Carter Blogau and O'Neill Jones and Feldman, the distributor, were. So the—once again, there's simply no merit to these claims. Judge Fitzwater knocked them down in his—he went and run that right after the other in his opinion, very thorough and exhaustive in the way he wrote the opinion. And I see no—once again, that's all there is to the appeal, as I see it. I won't keep talking unless you've got some questions. Thank you very much. Appreciate it. Thank you, Your Honor, just a few points. First, of course, CBS had extremely serious defenses, and they were not resolved in the proceeding below. They never moved for summary judgment on CBS being negligent. There's no finding like that. CBS is a separate corporate entity, had no responsibility for RETRAC, no duty to supervise, absent, very clear notice. And they themselves argued in another context that CBS didn't have serious notice of what RETRAC was doing. So CBS was litigating on the merits, and that's what the liability fixing trial was doing, to establish that CBS was liable. That proceeding ended with a settlement agreement that said, we agree CBS is not liable. A counsel says that you decide liability in the coverage dispute. That's just wrong. That's what—Edgeworth says you have a liability fixing proceeding, not in the coverage dispute. You establish liability. Then you have a coverage dispute to determine whether or not the liability that has been established fits within the terms of the policy. But you never get there if you don't have liability. That's what a liability fixing dispute is for. It happened here. RETRAC was determined to be responsible under the settlement agreement. CBS was not. Counsel says a settlement can't impose liability because of the case, the Gandhi case. Well, that's true. But this settlement answers that. Paragraph 7 explicitly says, that's the whole point of the type of settlement, of the non-waiver agreement, is that the defendants will not assert the Gandhi defense. You don't have to establish liability in an adversarial trial. That's what's going on. That's why it was appropriate to say that RETRAC, like any defendant, defendants are insured. Policyholders, when they settle cases, when cases are settled, they don't say, well, you never proved my liability. It was settled. Therefore, the insurer can't say, you know, I'm not going to pay. It's normal for an insurer to pay settlement costs so long as they relate to an insurable claim. That's what happened here. Again, there's a fight over whether there is coverage for RETRAC's liability, for the amount that RETRAC owed because of the settlement agreement. CBS owed nothing because of the settlement agreement. That's an essential principle of liability insurance. Counsel relies on the bankruptcy provision of the policy, which does indeed say a bankruptcy doesn't relieve the insurer of its duty to pay a liability. But there we are right back at the ironclad rule that decides this case. There has to be a liability. Just because the insurer is bankrupt and therefore can't make the payment, that's what that provision is about. The fact that you didn't make the payment doesn't mean the insurer can say, well, you didn't make the payment, so I'm not going to reimburse you, indemnify you. There has to be a liability. Nobody is arguing here that the bankruptcy relieved CBS of liability. What Edgeworth says, this is so critical, what Edgeworth says is that a bankruptcy results in the discharge of personal liability for the debt, for the amount that you owe. But then what you do is establish substantive, we can call it substantive liability for the underlying conduct in a liability-fixing trial. And if you do that, then the fact that the insurer was bankrupt and had its personal liability for the debt discharged doesn't stand in the way of saying, okay, insurer, you owe because the policyholder is liable in substance for this conduct. Normal proceeding, and it's the very proceeding that happened here, I can't say it enough times, it's what happened here, RETRAC and OJF ended up owing money paid on their behalf by the insurers. That's the way it's supposed to work. At the same time, CBS, fighting, denying any substantive liability, refused to be part of it, and the plaintiffs, in order to obtain and reach a comprehensive global agreement, accepted and agreed that CBS could not and would not be declared liable. That's the essential predicate for recovery under Edgeworth, and it didn't happen here. If there are no further questions, I'll cede the balance of my time. Thank you very much. Thank you. I thank both sides for your presentations this morning. One more case of the day.